PER CURIAM.
The Judicial Qualifications Commission (JQC) recommends that we publicly reprimand Judge Alan R. Schwartz, Chief Judge of the Third District Court of Appeal, for exhibiting intemperate and discourteous behavior during oral argument in two appellate proceedings. We have jurisdiction. See Art. V, § 12, Fla. Const. As explained in more detail below, based on the stipulated facts, the JQC’s recommendation is approved.
On April 26, 1999, the'JQC filed in this Court a notice of formal proceedings against Judge Schwartz, setting forth in pertinent part the following:
PRELIMINARY STATEMENT
Despite repeated warnings and advice from this Commission to refrain from *111 rude, impatient, and discourteous remarks from the bench addressed to or about counsel or their clients, or otherwise to refrain from verbal abuse of those appearing before you, you have continued to engage in such conduct as hereafter described. These prior warnings include those delivered to you in a Rule 6(c) meeting held with you on or about February 23,1993, again in a Rule 6(b) hearing in cases number 92-305 and 93-151 held on or about December 17, 1993, and still again in a conversation with the then vice-chairman of the Commission in or about June 1996 relating to case number 96-194. The episodes herein described are particularly serious because they each involved verbal abuse of law students known to you to be making initial appearances before your court.
COUNT ONE
1. On or about May 26, 1998, you presided over a three-judge oral argument panel of your Court sitting in Miami, Florida. Present in the courtroom was Amy Ronner, Esq. (“Professor Ron-ner”), co-author of a legal text relating to Florida appellate practice, and a member of the law faculty of St. Thomas University. Professor Ronner was present because she is a special assistant public defender of Miami-Dade County assigned to assist or observe her students from St. Thomas University School of [L]aw in connection with their presentation as certified legal interns of the case for the appellant in the final case on the docket, A.J.B. v. State, No. 97-3243.
2. During argument of other cases in the first portion of the docket, on several occasions you needlessly and rudely asked sarcastic and irrelevant questions of counsel in those cases followed by derogatory comments designed to embarrass Professor Ronner and to denigrate her text. For example, and not by way of limitation, you asked one lawyer if the podium had “appellee” or appellant” written on it, and upon receiving an answer you said, “Ms. Ronner will be glad to hear that.” On another occasion you asked an attorney if the attorney knew the time at which the second portion of the calendar began, and when the lawyer said “10 o’clock,” you said, “Well, Ms. Ronner says it is 10:30.”
3. A.J.B. v. State was to be argued by legal intern Kelly Lynch, a student of Professor Ronner. Before Ms. Lynch began to speak for the appellant, you stated that “There is one case which no one has mentioned, which is dispositive of this case.” Without identifying a case dealing with the merits of A.J.B., you asked Ms. Lynch, “have you ever heard of the Anders case?” This was an obvious reference to Anders v. California, 386 U.S. 738[, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)], a case relating to the appropriate action to be taken by appellate counsel in a cause in which the counsel in good faith believes that there is no justiciable issue. In response to the question regarding the Anders case, Ms. Lynch said, “Yes, but ...” She was interrupted, by your asking, “Are you aware I can sanction legal interns?”
4. Again Ms. Lynch began to speak, only to be interrupted by you again. You asked, “Doesn’t the writer of the treatise teach you that it is wrong to argue frivolous appeals?” As Ms. Lynch sought once more to answer, you stood up and walked out of the courtroom. The other panel members then walked out after you. The case was affirmed per curiam on June 3, 1998[. See A.J.B. v. State, 717 So.2d 1020 (Fla. 3d DCA 1998) (table decision)].
5. Your actions needlessly reflected upon Professor Ronner and prevented Ms. Lynch (or the assistant attorney general who was present) from either explaining why they had overlooked a case on the merits, why it might not be relevant, or why a good faith argument could not be made for a change in the *112 law. Further, your actions in effect deprived the appellant of an oral argument in support of his appeal. Your conduct also appeared to demonstrate unacceptable bias and prejudice toward the certified legal intern program or its mentor.
COUNT TWO
6. On or about December 14, 1998, you presided over a three-judge oral argument panel sitting in Miami, Florida, in the case of K.D.D. v. State, No. 98-1545. Professor Ronner was again present in the courtroom.
7. This case was to be argued for the appellant by certified legal intern Annabel C. Majewski, also a student of Professor Ronner. As soon as Ms. Majew-ski began her argument, you interrupted and began berating her with questions and comments deriding her position. For example, you asked Ms. Majewski whether Professor Ronner had ever filed an Anders brief in any case. Ms. Ma-jewski responded, “Not that I know of.” You then asked, “Do you think it is appropriate for frivolous cases to be argued to the court and for any law school program to waste this court’s time?” When Ms. Majewski tried to explain why her position was not frivolous and to cite cases which supported it, you again interrupted her and told her to save the rest of the time for rebuttal “if there is rebuttal.” The State then rested on its brief, and therefore there was not opportunity for the appellant to be further heard. The case was later summarily affirmed. [See K.D.D. v. State, 727 So.2d 933 (Fla. 3d DCA 1998) (table decision).]
8. When the last case had been called, Professor Ronner and the clinic students began to leave the courtroom. As she left you spoke loudly to Ms. Ronner to gain her attention by stating, “Ms. Ronner ... Ms. Ronner.” When she acknowledged your call to her, you said in a sarcastic manner, “So this is what you call training?”, or words to that effect.
9. Your actions again needlessly reflected upon Professor Ronner, prevented Ms. Majewski from effectively representing the appellant, and deprived the appellant of an oral argument in support of his appeal. Your conduct appeared to demonstrate unacceptable bias and prejudice toward the certified legal intern program or its mentor.
The JQC asserted that the facts set forth in the notice, if true, would establish that Judge Schwartz engaged in conduct unbecoming a member of the judiciary in violation of Canons 1, 2, and 3 of the Code of Judicial Conduct.[1]
Subsequent to receiving the notice, Judge Schwartz entered into a stipulation with the JQC. In the stipulation, the parties accepted as true the facts set forth in the notice. Concomitantly, Judge Schwartz waived his right to a hearing and agreed to submit no further evidence or pleadings in the proceedings against him. Further, the parties acknowledged that Judge Schwartz, without prior request by the JQC, voluntarily had: (1) apologized in writing to the individuals subject to his intemperate and discourteous conduct; (2) undertaken a program of personal counseling and stress management; (3) expressed *113 a willingness for other members of the Third District, in his stead, to preside over routine matters heard by three-judge panels; and (4) sought and obtained the agreement of his fellow judges for all oral arguments to be recorded by audio and video means in order to make such arguments readily reviewable. The parties also summarized Judge Schwartz’ legal career:
Following his legal education, Harvard Law . School, L.L.B.1958 (cum laude), Judge Schwartz practiced for approximately fifteen (15) years. He was appointed Circuit Judge by Governor Reubin Askew in 1973; was reelected without opposition, 1974. Appointed to the Third District Court of Appeal Judge by Governor Askew, 1978. Retained in office, 1980, 1986, 1992, 1998. Elected Chief Judge, January, 1983, and reelected in April 1999 to ninth consecutive term.
Finally, the stipulation concluded with the following remarks:
Judge Schwartz apologizes to the public and the Bench and Bar of this state, and expresses his sincere regrets at the events prompting these proceedings. Further, his concerns have enabled him to gain advantageous insights into possible causative factors, culminating in his firm conviction that he will not engage in similar conduct in the future.
Subsequent to the stipulation being executed, the JQC filed with this Court its recommendation that Judge Schwartz be issued a public reprimand in a manner similar to that issued in In re Wood, 720 So.2d 506, 509 (Fla.1998), wherein we called Judge Leonard V. Wood before this Court to be publicly reprimanded for, among other things, exhibiting intemperate and discourteous behavior in the courtroom. In recommending this disciplinary measure for Judge Schwartz, the JQC considered five factors. First, the JQC considered that Judge Schwartz failed to heed previous JQC warnings and advice concerning similar intemperate and discourteous behavior. Second, the JQC considered that Judge Schwartz’ actions were directed towards young legal interns as well as a professor who was not in a position to respond to Judge Schwartz’ “unprovoked criticism” of her textbook or teaching. Third, the JQC considered Judge Schwartz’ voluntary attempts to apologize for his actions and prevent similar actions from occurring in the future. Fourth, the JQC considered Judge Schwartz’ lengthy and distinguished career as a member of Florida’s judiciary. Finally, the JQC considered Judge Schwartz’ acceptance of personal responsibility for his actions. After reviewing the stipulated facts in this case as well as relevant case law, we approve the JQC’s recommendation that Judge Schwartz be publicly reprimanded because of this cumulative misconduct, which is in violation of Canons 1, 2(A), and 3(B)(4) and (7) of the Code of Judicial Conduct. Further, consistent with the in-person reprimand administered in In re Wood, and in accordance with the policy we recently announced in In re Frank, 753 So.2d 1228, 1242 (Fla.2000) (“We have ... come to conclude that when the conduct of a jurist is so egregious as to require a public reprimand, such reprimand should be issued in person with the defaulting jurist appearing before this Court.”), we require Judge Schwartz to appear before this Court to receive his public reprimand.
Importantly, the stipulated facts in this case show that the JQC or a member thereof warned and advised Judge Schwartz on three separate occasions-twice in Í993 and once in 1996-to refrain from making “rude, impatient, and discourteous remarks from the bench.” The fact that these warnings and advice were administered privately does not negate the fact that warnings were required because of similar misconduct in the past. Notwithstanding these prior warnings and advice, it is clear that Judge Schwartz continued to make rude, impatient, and discourteous remarks from the bench. Judge Schwartz admits this. Specifically, *114 in this case, Judge Schwartz not only berated two legal interns who were presenting argument before the Third District, he also cut short both interns’ oral argument presentations: the first time by walking off the bench before the oral argument had concluded; the second by interrupting the intern and telling her to save the rest of the time for rebuttal, “if there is rebuttal.” Further, Judge Schwartz needlessly directed discourteous and irrelevant remarks toward Professor Ronner, who was present in court to supervise the legal interns’ arguments, not to present argument to the Third District.
Certainly, the fact that the legal arguments of the legal interns may have, in Judge Schwartz’ opinion, lacked merit is no excuse for violating Canon 3 of the Code of Judicial Conduct. Once having determined to grant oral argument, this canon unequivocally and without caveat states that a “judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and other with whom the judge deals in an official capacity.”
For an appellate judge, oral argument is the only time when the appellate court deals publicly with the lawyers and the litigants with regard to the resolution of the appeal, and, thus, one of the few times when this important canon even comes into consideration for an appellate judge. As observed by Judge Richard Arnold of the United States Court of Appeals for the Eighth Circuit, “oral argument ... is the only time that all of the members of the court and all of the lawyers are together to discuss the ease.” See Myron H. Bright & Richard S. Arnold, Oral Argument? It May Be Crucial!, A.B.A. J., Sept. 1984, at 68, 69. The limited time that an appellate judge is in oral argument makes compliance with Canon 3 even more critical in order to promote public confidence in the judiciary. The sum of this conduct is in direct violation of this Court’s requirements for judges stated in In re Turner, 421 So.2d 1077, 1081 (Fla.1982):
We judges must always be mindful that it is our responsibility to serve the public interest by promoting justice and to avoid, in official conduct, any impropriety or appearance of impropriety. We must administer our offices with due regard to the system of law itself, remembering that we are not depositories of arbitrary power, but judges under the sanction of law. Judges are expected to be temperate, attentive, patient and impartial, diligent in ascertaining facts, and prompt in the performance of a judge’s duties. Common courtesy and considerate treatment of jurors, witnesses, court personnel, and lawyers are traits properly expected of judges. Court proceedings and all other judicial acts must be conducted with fitting dignity and decorum, reflecting the importance and seriousness of the inquiry to ascertain the truth.
This Court has accepted recommendations from the Judicial Qualifications Commission for public reprimands for conduct in violation of Canons 1, 2(A), and 3(B)(4) and (7). See, e.g., In re Wright, 694 So.2d 734, 734-36 (Fla.1997) (involving judge who conducted himself in two separate cases in rude, abusive, insulting, and inappropriate manner); In re Inquiry Concerning Perry, 641 So.2d 366, 367-69 (Fla.1994) (involving judge who unnecessarily berated army recruiter for wearing dress uniform in courtroom and exercised his contempt powers in an arbitrary and improper manner); In re Marko, 595 So.2d 46, 46 (Fla.1992) (involving judge who made “rude, improper, and inappropriate” remarks during dissolution of marriage hearing); In re Carr, 593 So.2d 1044, 1045 (Fla.1992) (involving judge who made rude and improper remarks regarding ethnicity during a court hearing); cf. In re Zack, 570 So.2d 938, 939 (Fla.1990) (involving judge who used “very profane language” in reference to the Broward County Sheriff, although the judge did not use such language in open court). Further, in In re Wood, we required Judge Wood to appear in person before this Court to be publicly *115 reprimanded based on his repeated display of inappropriate behavior from the bench. See 720 So.2d at 509 (involving judge’s inappropriate behavior on the bench); cf. In re Wilson, 750 So.2d 631, 632 (Fla.1999) (requiring that judge appear in person to receive public reprimand based on various acts of misconduct); In re Alley, 699 So.2d 1369, 1369-70 (Fla.1997) (same); In re Sturgis, 529 So.2d 281, 281-86 (Fla.1988) (same); In re Block, 496 So.2d 133, 134-35 (Fla.1986) (same).
In accordance with the policy recently announced in In re Frank, we call Judge Schwartz to appear before this Court to be publicly reprimanded because of the seriousness of our concern about his breaches of acceptable conduct. Judge Schwartz, in his position as Chief Judge of the Third District Court of Appeal, performs in a position which demands the very highest in trust and confidence from the people who are served by our court system. ■ Nothing less than the rule of law is jeopardized when a person in such a high position breaches that trust and reduces the people’s confidence that justice will be fairly administered in an impartial manner. Judge Schwartz is a leader of appellate judges, and we must and do expect conduct of him that is commensurate with the awesome responsibility that has been entrusted to him. Therefore, we accept the recommendation of the Judicial Qualifications Commission and will publicly reprimand Judge Schwartz in a public appearance by him before this Court.
Accordingly, we hereby command Judge Alan R. Schwartz to appear before this Court at 9 a.m. on Wednesday, May 10, 2000, for the administration of a public reprimand for the actions noted above.
It is so ordered.
" .HARDING, C.J., and WELLS, PARIENTE and QUINCE, JJ., concur.
SHAW and LEWIS, JJ., concur in result only.
ANSTEAD, J., recused.

. Canon 1 of the Code of Judicial Conduct provides in pertinent part: "A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved.” Canon 2 A provides: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Fla. Code Jud. Conduct, Canon 2 A. Finally, various sections of Canon 3 establish that ''[a] judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity” and that "[a] judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.” Fla. Code Jud. Conduct, Canon 3 B(4), (7).